**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA, a federally-recognized
Indian Tribe,

      Petitioner,

vs.

UNITED STATES OF AMERICA,

      Respondent.

_____/

**PETITION TO QUASH SUMMONS TO AMERICAN EXPRESS COMPANY**
**FOR RECORDS OF THE MICCOSUKEE TRIBE OF INDIANS OF FLORIDA**

Pursuant to 26 U.S.C. §7609(b)(2), Petitioner, the Miccosukee Tribe of Indians of Florida

(the "Tribe"), moves this Court to enter an Order quashing the summons (attached hereto as

Exhibit A) issued to American Express Company ("American Express"), for the "books, records,

(and) papers" related to the Tribe.  As grounds therefor, the Tribe states as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to hear this Petition pursuant to the provisions of 26

U.S.C. §7609(h)(1) which provide, in pertinent part:

> Jurisdiction.--The United States district court for the district within
> which the person to be summoned *resides or is found* shall have
> jurisdiction to hear and determine any proceeding brought under
> subsection (b)(2), (f), or (g).

*Id.* (emphasis added);  s*ee also United States v. Toyota Motor Corporation,* 561 F. Supp. 354, 360-61 (C.D. Cal. 1983) ("Once the judicial power of the United States is established  . . . the Government must show that it has brought its enforcement petition in a convenient forum.").

2.      American Express, the party summoned has several offices located in the Southern District of Florida.[1]  Under such circumstances, American Express is "found" in this District for purposes of Section 7609(h)(1) and both venue and jurisdiction over the Tribe's Petition To Quash lie here.  *See* 26 U.S.C. § 7609(h)(1); *Miccosukee Tribe of Indians of Florida v. United States*, No. 10-CV-21332, 2010 WL 3193661, *1 n.2 (S.D. Fla. Aug. 11, 2010) ("Section 7609(h) provides, in pertinent part, that "[t]he United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any [proceeding to quash]." The parties do not dispute that *the party*

---

[1] Pursuant to Rule 201, Fed. R. Evid, this Court may take judicial notice of the fact that American Express maintains numerous offices within this District, including a physical payment processing center at 2965 West Corporate Lakes Blvd in Weston, Florida.  *See* "Contact Us" and YellowPages.com directory information attached hereto as Comp. Exhibit C.  *Williams v. United States*, No. 1:05-mc-6, 2005 WL 3105404 (E.D. Tenn. 2005).

> Fed.R.Evid. 201 provides in relevant part that a "court may take judicial notice, whether requested or not" of a "judicially noticed fact" which "must be one not subject to reasonable dispute," a requirement satisfied if the fact is "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned;" *See also City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651, 655 n. 1 (6th Cir.2005) (same). Both [summoned record keepers] maintain branches in multi-story buildings in downtown Chattanooga only a few blocks from the United States Courts building.

*Id.* at *2 n.1.  *See also Pilchesky v. United States*, No. 3:08-MC-0103, 2008 WL 4452672, *2 (M.D. Pa. 2008) (consulting local telephone and business directories and, finding that the accuracy of these sources cannot reasonably be questioned, taking judicial notice, pursuant to Federal Rule of Evidence 201, of the fact that the third-party record keepers are "found" in the district for purposes of § 7609(h)(1)).

summoned . . . *has a branch office in Miami and is thus 'found in this District for purposes of Section 7609(h).*") (emphasis added); *Pilchesky v. United States*, No. 3:08-MC-0103, 2008 WL 4452672, *2 (M.D. Pa. 2008) ("the Court agrees that the presence of a branch office or some other purposeful, permanent presence by an entity within a district is sufficient for that entity to be 'found' in that district for purposes of § 7609(h)(1)"); *Williams v. United States*, 2005 WL 3105404, at *2 (E.D. Tenn. 2005) (noting that "the government . . . has taken the position that where a third-party record keeper maintains a branch office within a district, that record keeper is 'found' within the district for purposes of the jurisdictional statute, 26 U.S.C. § 7609(h)(1)" and concluding that "[a] branch office indicates a significant presence within the district, and . . . is sufficient to support subject matter jurisdiction under 26 U.S.C. § 7609(h)(1)"). [2]

## PARTIES

3.      The Tribe is a federally recognized Indian Tribe found within the geographical jurisdiction of this Court.  The Tribe's members reside and work within the Southern District of Florida.  The Tribe exercises powers of self-governance under a tribal Constitution approved by the Secretary of Interior, pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476.

4.      Pursuant to the requirements prescribed by IRS Form 2039, Part D, the United States of America is named as the Respondent.  *See* Exhibit A at p. 5.

---

[2] In an abundance of caution and to protect all of its rights, the Tribe will also file a Protective Petition in the Southern District of New York, asking the court there to stay any consideration and/or enforcement of the Summons until this Court either: (i) issues an opinion which acknowledges jurisdiction and renders a substantive ruling on this Petition To Quash, or otherwise (ii) transfers jurisdiction to the Southern District of New York or dismisses the action in this Court.

## OBJECTIONS TO ENFORCEMENT OF SUMMONS

5.      The Tribe objects to enforcement of the Summons for the following reasons:

(a)     The Tribe has sovereign immunity and the IRS lacks statutory authority to obtain these documents absent a Congressional waiver of immunity. Although the United States may exercise its superior sovereign powers through Congress to waive tribal immunity, it has not done so here. A United States agency or agent cannot, as the IRS seeks to do here, unilaterally abrogate tribal immunity without statutory authority.[3]

(b)     The Summons, on its face, is apparently issued for an improper purpose. Specifically, the Summons is neither directed at nor limited to records (if any) "relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the [Tribe]." *See* Summons (Exhibit A) at 1.  Indeed the Tribe is specifically exempt from major Internal Revenue Code provisions – the federal income tax in particular.  The Summons seeks production of all records for all accounts belonging to the entire Miccosukee Tribe of Indians of Florida. There is no proper purpose for the IRS to obtain unfettered access to all the financial account information of the Tribe which: (i) has sovereign immunity; and (ii) is not subject to federal income taxation.

---

[3] The district court in *Miccosukee v. United States*, 2010 WL 3195661, at *4, 7 (S.D. Fla. Aug. 11, 2010) rejected the Tribe's claim of immunity with regard to records involving the former chairman, Billy Cypress.  The court granted a hearing, however, to determine whether the summons was issued for a proper purpose and whether the IRS already possessed the documents it sought.

(c)     Even if the Summons were issued for a proper purpose, the manner in which it is written is so overbroad and invasive as to render it unenforceable. The Summons is so broad that it seeks privileged, personal, and confidential records of the Tribe which are clearly irrelevant to any investigation pertaining to the "administration or enforcement of the internal revenue law laws."

(d)     The Summons was issued in bad faith.  It constitutes an improper fishing expedition against the Tribe: (i) to harass the Tribe; (ii) to improperly obtain confidential financial and other information to which the IRS is not entitled; and (iii) to pressure the Tribe to settle unrelated collateral issues. As a result, the Summons to American Express for the Tribe's records should be quashed.

## MEMORANDUM OF LAW

### I.     THE IRS SUMMONS VIOLATES THE TRIBE'S SOVEREIGN IMMUNITY BECAUSE THE IRS LACKS THE REQUISITE STATUTORY AUTHORITY TO ABROGATE THE TRIBE'S IMMUNITY

The IRS has issued a Summons requesting Tribal documents pursuant to the Internal Revenue Code (the "IRC."). *See* Summons (citing IRC §§ 7602-5, 7610, 7210). Dropping all pretense that the IRS has not been engaged in a fishing expedition for Tribal documents unrelated to any IRS investigation, *see e.g., Miccosukee,* 2010 WL 3195661, Tr. at 7:18-19, excerpt attached as Exhibit B (in which the IRS argued it was *not* seeking tribal records and that tribal records "would be records which would in some way impact tribal issues"), the IRS now seeks Tribal documents directly.  *See* Summons ¶ 5 ("This request is for *all* documents pertaining to the Miccosukee Tribe in *any* capacity...") (emphasis added).  The IRS, however, is

barred from seeking the Tribe's documents by the doctrine of tribal sovereign immunity. Although the district court in *Miccosukee*, 2010 WL 3195661 concluded that tribal sovereign immunity did not bar the IRS summons in that case, *see id*., at *4, the court's conclusion is inapplicable here because the records in *Miccosukee* were sought in connection with an IRS investigation of an individual Tribal member.  Furthermore, the court's conclusion that Tribes can never assert sovereign immunity against the United States would otherwise be incorrect for all of the reasons stated herein.

The IRS seeks Tribal documents pursuant to the IRC. However, none of the IRC provisions which the IRS seeks to enforce against the Tribe apply specifically to tribes and none contain a waiver of tribal immunity. IRC § 7602 allows the IRS to examine books and witnesses material to an IRS inquiry as specified in subsection (a), and contains various related subsections regarding notice, termination, and limitations on the summons authority. *See* 26 U.S.C. § 7602. It contains no express waiver of tribal immunity and does not mention Indian tribes. *See id*. Likewise, IRC § 7610, which applies to a summons authorized under § 7602, contains no waiver of tribal immunity and does not mention Indian tribes. *See* 26 U.S.C. § 7610 (authorizing fees and costs for witnesses, and specifying exceptions). Furthermore, because it violates tribal immunity, the summons is not authorized under § 7602. Finally, IRC § 7210, which provides penalties for failure to obey a proper summons, does not waive tribal immunity and makes no mention of Indian tribes. *See* 26 U.S.C. § 7210. The IRS fails to show how any of these provisions, which contain no waiver of tribal immunity, and do not mention tribes, authorize the IRS to obtain Miccosukee Tribal documents in violation of the Tribe's sovereignty. The IRC Sections at issue here do not even purport to apply to tribes.

The Tribe is also not a "person" under the IRC provisions attached to the Summons. Section 7602 of the IRC gives the IRS authority to examine records of "any person" with respect to an internal revenue tax liability or collection:

> **(a) Authority to summon, etc.**--For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized--
>
> **(1)** To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

IRC § 7602(a).  IRC § 7210 provides penalties for any "person" summoned to produce records:

> Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda, or other papers, as required under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records, memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution.

*Id.*  IRC § 7610 provides for fees and costs to "persons" summoned under § 7602 for expenses incurred in connection with the summons:

> **(a) In general.**--The Secretary shall by regulations establish the rates and conditions under which payment may be made of—
>
> **(1)** fees and mileage to persons who are summoned to appear before the Secretary, and
>
> **(2)** reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required to be produced by summons.

*Id.*

None of these provisions specifically mention Indian tribes. Furthermore, the IRC's general definition for "persons" under this title also does not include Indian tribes:

> **(a)** When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
>
> **(1) Person.**--The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

IRC § 7701(a)(1). Nor is an Indian tribe similar to the entities listed as "persons" under the definition.[4]" "Indian tribal government" is defined separately under the same subsection, *id.* § 7701(a)(40), as is the "United States", *id.* § 7701(a)(9), and "State", *id.* § 7701(a)(10). "Partnership and partner" are also defined separately, *id.* § 7701(a)(2), as is "Corporation", *id.* § 7701(a)(3), yet unlike Indian tribes, both are included in the definition of "person."

Indian tribes are sovereign governmental entities entirely unlike any of the entities listed as persons under subsection (a)(1). Absent a specific indication to the contrary, there is a longstanding presumption that the term "person" in statutes does not include the sovereign. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701, 709-11 (2003); *Vermont Agency of Natural Resources v. United States* ex rel. *Stevens*, 529 U.S. 765, 780 (2000); *Marsoun v. United States*, 525 F. Supp. 2d 206, 213 (D.D.C. 2007). In

---

[4] IRC § 7701(c) states that "includes" and "including" does not exclude "other things otherwise within the meaning of the term defined." Indian tribes, however, are not otherwise within the meaning of "persons". Indian tribes are sovereign governmental entities. If tribes were to be considered persons under this definition it is unclear what legal entity would *not* be. By defining "person" and providing a list of legal entities considered "persons," the legislature obviously must have intended to exclude at least some legal entities or the list would be superfluous. And it is difficult to imagine a legal entity more different from those listed than a sovereign Indian tribe. Thus, although in light of subsection (c) the list contained in the definition of "person" is not necessarily exclusive, *compare Poulakis v. Rogers*, 341 Fed. App'x. 523, 530 (11th Cir. 2009) (principle of *expressio unius* says that when a legislature has enumerated a list or series of related items, the drafter intended the list to be exclusive), it is not reasonable to include entities entirely dissimilar to those listed. *Cf. Gouch v. California Franchise Tax Bd.*, No. 1:08-CV-3299, 2009 WL 2957284, at* 3 (N.D. Ga. Sept. 15, 2009) (California tax board was clearly not a person under IRC § 7701, but instead was part of the state of California).

addition, applying these IRC provisions to the Tribe would be inconsistent with the authority cited herein requiring explicit waiver of tribal immunity, and with the Indian law canon requiring statutes to be construed liberally in favor of tribes. *See Oneida County, N.Y. v. Oneida Indian Nation of N.Y.* 470 U.S. 226, 247 (1985) ("The canons of construction applicable in Indian law are rooted in the unique trust relationship between the United States and the Indians. Thus, it is well established that treaties should be construed liberally in favor of the Indians …. The Court has applied similar canons of construction in nontreaty matters") (citations omitted).

A waiver of tribal sovereign immunity must be specific, and such a waiver must be contained within a federal statute. Absent such language, the correct presumption is that silence does not work a divestiture of tribal sovereign immunity. *NLRB v. Pueblo of San Juan*, 276 F.3d 1186, 1196-97 (10th Cir. 2002) (citing *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 n.14 (1982)); *see also Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F. Supp. 2d 1131 (N.D. Okla. 2001) (tribe retained sovereign immunity – there was no express waiver and statute did not include tribes); *Bassett* v. *Mashantucket Pequot Tribe*, 204 F.3d 343, 357 (2d Cir. 2000) (nothing on the face of the Copyright Act purports to subject tribes to the jurisdiction of the federal courts in civil actions brought by private parties). As a result, tribal sovereignty is not easily abrogated and may be abridged only by a clear indication by Congress. *See, e.g., NLRB v Pueblo of San Juan*, 30 F. Supp. 2d 1348, 1354 (D.N.M. 1998) (tribal sovereignty can be abridged only by clear indication "in the language or legislative history of a statute, or by federal preemption of the entire subject area"); *see also, NLRB*, 276 F.3d at 1192 (tribes retain their existing sovereign power until <u>Congress</u> acts by withdrawing them expressly).

Absent abrogation by Congress or consent of the Miccosukee Tribe, tribal immunity bars the IRS from obtaining the Tribe's documents. The doctrine of tribal immunity provides that

Indian tribes possess inherent tribal sovereignty derived from their own inherent powers. *NLRB v. Pueblo of San Juan*, 276 F.3d 1186, 1192 (10th Cir. 2002) (Indian tribes "are sovereign political entities possessed of sovereign authority not derived from the United States, which they predate"); *see also id.* (citing Felix Cohen, *Handbook of Federal Indian Law 232* (1982)) ("tribes consistently have been recognized … by the United States, as 'distinct, independent political communities' qualified to exercise powers of self-government, not by virtue of any delegation of powers, but rather by reason of their original tribal sovereignty").   Thus, Indian tribes have a unique relationship with the federal government as dual sovereigns:

> Tribes are not the equivalent of states or territories, and are nothing akin to municipal governments which derive all of their authority from the states.  As this Court stated elsewhere, Indian tribes and the federal government are dual sovereigns.  Tribes have a unique relationship with the federal government and occupy a unique status under the law.  As Chief Justice John Marshall observed in the historical case of *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1931) [1831]: 'The condition of the Indians in relation to the United States is perhaps unlike any other two people in existence … The relation of the Indians to the United States is marked by peculiar and cardinal distinctions which exist nowhere else." *Id*. at 16.

*NLRB v. Pueblo of San Juan*, 30 F. Supp. 2d 1348, 1354 (D.N.M. 1998) (internal citations omitted); *see also Merrion v. Jicarilla Apache Tribe*,  455 U.S. 130, 140 (1982) ("Indian tribes within 'Indian country' are a good deal more than 'private, voluntary organizations.'  They 'are unique aggregations possessing attributes of sovereignty over both their members and their territory.'").   The district court in *Miccosukee* recognized that Indian tribes are not taxable entities,  *Miccosukee*, 2010 WL 3195661 at *1, and that tribal income is generally exempt from federal income tax statutes.  *Id.*  Therefore, unlike the facts in *Miccosukee* which involved an individual tribal member, the former chairman, whom the court stated was subject to the same income tax and employment tax obligations as other citizens unless a treaty, federal statute or

other law, provides otherwise, *id.*, the facts here show without dispute that the IRS seeks to acquire all the records of a sovereign Tribe.  This, the IRS cannot do.

In *Miccosukee*, the IRS took the position that the Tribe can <u>never</u> assert immunity against a United States agency or agent, regardless of whether that agency has statutory authority to abrogate the Tribe's immunity, and the district court agreed.  *See Miccosukee*, 2010 WL 3195661 at *3-4 (stating that the Tribe cannot use sovereign immunity to quash a summons issued by the United States because Indian sovereign immunity must give way to the superior sovereign interests of the United States).  The Court's conclusion in *Miccosukee* is incorrect, and conflicts with longstanding precedent requiring an explicit waiver of tribal immunity.  Even if the district court had been correct with regard to the specific records of the former chairman, the district court did not find, and it would be error if it did, that all records of the Tribe were subject to disclosure.

The presumption has always been that, absent an explicit waiver, Congress meant for tribal sovereign immunity to apply, and that Congress knows how to make an explicit waiver of immunity. *See Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1133 (11th Cir. 1999) ("Congress has demonstrated in this very statute its ability to craft laws satisfying the Supreme Court's mandate that courts may find that Congress has abrogated sovereigns' immunity from lawsuits only where it has expressed unequivocally its intent to do so."). The IRS, on the other hand, would have the reverse: absent explicit language from Congress, the presumption would be that tribal immunity does not apply. It cannot be that tribal immunity <u>never</u> applies against the United States because Congress, even under the broadest interpretation of the precedent cited by the IRS and the district court in *Miccosukee*, would retain the power to legislate tribal sovereignty. No one contends that Congress could not say: "Indian

11

tribes retain immunity against the United States under this statute." It is against established precedent, however, to require Congress to legislate immunity that way, because the presumption has always been that silence means Congress did not intend to waive tribal immunity. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978) (noting that "'without congressional authorization,' the 'Indian Nations are exempt from suit'" and that "[i]t is settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'") (internal citations and quotations omitted). But that is precisely what the IRS is arguing – that the presumption is somehow reversed, and that Congress can only allow Indian tribes to retain immunity against the United States through express legislation. Moreover, in light of the longstanding presumption that a waiver of tribal immunity must be explicit, it is unlikely Congress was aware at the time of drafting the IRC – a statute which does not even apply generally to the Tribe – that in order to maintain tribal immunity under the statute Congress would have to legislate it expressly.

Nor can the IRS show that the IRC applies generally to the Tribe. Some courts have interpreted *Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99 (1960)[5] as standing for the proposition that laws of 'general application' apply to Indian tribes. First, the IRC, which

---

[5]  *Tuscarora* did not involve a statute generally applicable but silent as to Indians. Instead, the Federal Power Act, the statute involved in *Tuscarora*, specifically mentioned Indian reservations. *See* Brian P. McClatchey, *Tribally-Owned Business Are Not "Employers": Economic Effects, Tribal Sovereignty, And NLRB v. San Manuel Band Of Mission Indians,* 43 IDAHO L. Rev. 127, 155 (2006) (citing *Tuscarora*, 362 U.S. at 118). *Tuscarora* involved limitations on the power of the United States to condemn tribal lands. The Supreme Court's statement in *Tuscarora*, that general acts of Congress apply to Indians, was not actually applied in *Tuscarora* to those tribal reservation lands held in trust by the United States. *Tuscarora*, 362 U.S. at 116-22. To the contrary, it applied only to tribal lands which were outside the reservation and owned in fee by the tribe. *Id.* The Congressional intent and policy recognized by the Supreme Court in *Tuscarora* was to draw a clear distinction between those tribal lands held in trust by the United States and those tribal holdings which were not trust lands, when implementing laws that were otherwise generally applicable.

specifically exempts the Tribe from major provisions such as federal income taxation, cannot be considered generally applicable to the Tribe. *See* Rev. Rul. 67-284, 1967 WL 14945 (An Indian tribe is not a taxable entity); *see also* Internal Revenue Manual 4.88.1.4 (2010) ("Indian tribes are not entities subject to federal income tax because they are not included in IRC section 1 (individuals, trusts and estates) or IRC section 11 (corporations)".).  Moreover, the language in *Tuscarora* upon which these federal cases have based their 'general application' analysis has been recognized as *dicta* and not essential to *Tuscarora's* holding. *See, e.g., Shivwits Band of Paiute Indians v. Utah*, 428 F.3d 966, 984 (10th Cir. 2005) (Lucero, J., concurring).  Moreover, case law since *Tuscarora* has made clear that any abrogation of tribal immunity must be express and unequivocal.  *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1292 (11th Cir. 2001) (citing *Paraplegic*, 166 F.3d at 1130-34) (holding that the absence of any reference to the amenability of Indian tribes to suits under the ADA meant that the statute did not abrogate tribal sovereign immunity, notwithstanding *Tuscarora*). In addition, it appears that after the Supreme Court's decision in *Merrion*, the 'general application' *dictum* of *Tuscarora* is no longer viable:

> Thus *Merrion*, in our view, limits or, by implication, overrules *Tuscarora, supra*, at least to the extent of the broad language relied upon by the Secretary contained in *Tuscarora*, "that it is now well settled by many decisions of this Court that a general statute in terms applying to all persons includes Indians and their property interests."

*Donavan v. Navajo Forest Prods. Indus.*, 692 F.2d 709, 713 (10th Cir. 1982) (citing *Tuscarora Indian Nation*, 362 U.S. at 116); *see also Multimedia Games*, 214 F. Supp. 2d at 1135-36 ("Although the Supreme Court established forty years ago that a statute of general and broad application applies to all persons, including Indian tribes, this dictum has since been abrogated and numerous federal courts of appeal have rejected it through subsequent action.") (citation omitted) (footnote omitted).  *San Manuel Indian Bingo & Casino v. NLRB*, 475 F.3d 1306, 1311

(D.C. Cir. 2007) ("Moreover, *Tuscarora*'s statement is of uncertain significance, and possibly dictum, given the particulars of that case.").

Even assuming this language in *Tuscarora* had not been overruled, absent a specific waiver of tribal immunity, the IRS would at least have to show that the IRC is generally applicable to the Tribe, and that the Tribe does not fall under any of the exceptions. *Florida Paraplegic Ass'n, v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1129 (11th Cir. 1999) (a general statute presumptively governs Indian tribes "unless its application would (1) abrogate rights guaranteed under an Indian treaty, (2) interfere with purely intramural matters touching exclusive rights of self-government, or (3) contradict Congress's intent"). The IRS has not and cannot show this. As discussed *supra*, the IRC is not generally applicable to the Tribe. Furthermore, the Tribe falls under at least two exceptions, which would dictate against application of the IRC to the Tribe. First, applying the IRC generally to the Tribe would interfere with matters touching the Tribe's exclusive rights of self-government. Decisions regarding how, and with whom, the Tribe uses, maintains or invests its own revenue for the welfare of its members is a purely intramural matter. The IRS's attempt to circumvent tribal sovereignty in order to acquire the Tribe's private records from third party financial institutions thus interferes with the Tribe's exclusive rights to collect the Tribe's revenue and to use or distribute it for the welfare of the Tribe. Second, applying the IRC to obtain private tribal financial information would contradict Congress's intent to promote tribal self-sufficiency, which is precisely the Congressional purpose behind exempting Indian tribes from federal income taxes. The IRS could not obtain these records from the Tribe itself. Therefore, it should not be able to obtain them from the Tribe's banks or other financial institutions.

Thus, even under a general applicability analysis, which the Tribe disputes as inconsistent with established precedent requiring explicit waiver of tribal immunity, waiver of immunity is still presumed <u>only</u> with respect to laws of general application. *See e.g., Florida Paraplegic*, 166 F.3d at 1129-30).  The IRS has not shown that the IRC is generally applicable to the Tribe. The court in *Miccosukee* cited *Florida Paraplegic* for the proposition that tribal sovereign immunity bars no action whatsoever against Indian tribes by the United States in any capacity, regardless of whether those actions have been authorized by Congress. *Miccosukee*, 2010 WL 3195661 at *3-4.  However, if the Tribe could never assert immunity against the United States, it would be irrelevant whether or not a statute was generally applicable to the Tribe. The federal agency in question would never require statutory authority to proceed against the Tribe and could act unilaterally. Thus, the general applicability analysis still requires the IRS to show it is proceeding under a law that is generally applicable to the Tribe, and that the Tribe does not fall under any exception.

The IRS argued, and the court further concluded, in *Miccosukee* that tribal immunity cannot act as a shield against the United States. *See Miccosukee*, 2010 WL 3195661 at *4 (tribal immunity does not preclude the United States from exercising its superior sovereign powers). However, tribal immunity does act as a shield against the United States where the United States, exercising its sovereign powers through Congress, has elected not to waive tribal immunity:

> Like foreign sovereign immunity, tribal immunity is a matter of federal law. *Verlinden, supra,* at 486, 103 S.Ct., at 1967-1968. Although the Court has taken the lead in drawing the bounds of tribal immunity, Congress, subject to constitutional limitations, can alter its limits through explicit legislation. *See, e.g., Santa Clara Pueblo, supra,* at 58, 98 S.Ct., at 1676-1677.
>
> In both fields, Congress is in a position to weigh and accommodate the competing policy concerns and reliance interests. The capacity of the Legislative Branch to address the issue by comprehensive legislation counsels some caution by us in this area. Congress "has

> occasionally authorized limited classes of suits against Indian tribes" and "has always been at liberty to dispense with such tribal immunity or to limit it." *Potawatomi, supra,* at 510, 111 S.Ct., at 910. It has not yet done so.
>
> In light of these concerns, we decline to revisit our case law and choose to defer to Congress.

*Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 759-60 (1998).  In such a case, tribal immunity is exercised consistent with the United States' sovereign powers. Federal agencies or agents cannot unilaterally abrogate the Tribe's immunity where it was not Congress's intent. The United States may exercise its superior power by waiving the Tribe's immunity through <u>Congress</u>. It has not done so here.[6]

Citing only a portion of the relevant analysis, the IRS has also previously argued that tribal immunity is limited to circumstances where "the Tribe is being compelled to do something or restrained from doing something," and that requesting protected tribal documents from third party financial institutions does not compel or restrain the Tribe.  *See, e.g., Miccosukee*, 2010

---

[6] The district court in *Miccosukee* relied on the Eighth Circuit case *United States v. Red Lake Band of Chippewa Indians*, 827 F.2d 380, 382 (8th Cir. 1987) for the proposition that tribal immunity may never be exercised against the United States. *See Miccosukee*, 2010 WL 3195661 at *4. First, *Red Lake* is distinguishable because the court in that case found that under the Federal Records Act, 44 U.S.C. § 3301, *et seq.* (defining federal records as all documents "made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency"), and 25 C.F.R. § 11.11 (requiring C.F.R. courts to keep records of all court proceedings at a Bureau of Indian Affairs office), the records sought from the Bureau of Indian Affairs constituted agency records <u>belonging to the United States</u>. Here, the IRS does not seek records from another United States agency. It seeks the Tribe's private financial records which in no way constitute records belonging to the United States as defined in *Red Lake*. Second, to the extent *Red Lake* suggests that tribal immunity can <u>never</u> bar a United States agency action for Tribal records, it is inconsistent with binding precedent requiring explicit waiver of tribal immunity by Congress (or at the very least, requiring a finding that the statute under which the IRS purports to act is generally applicable to the Tribe), and otherwise incorrect for the reasons discussed herein. That the United States has superior sovereign powers does not mean that United States agencies and agents have unfettered authority to define or waive tribal immunity. This is a matter for Congress.

WL 3195661 at *4 n.7 citing *Dugan v. Rank*, 372 U.S. 609 (1963); Tr. August 9, 2010 at 11:12-20 (citing *Fisher v. United States*, 425 U.S. 391 (1976)) (Exhibit B); Tr. August 9, 2010 at 12:18-24 (citing *United States EPA v. General Electric Co*., 197 F.3d 592 (2d Cir. 1999)) (Exhibit B). The IRS's reliance on *Fisher* is misplaced. *Fisher* is not a case about tribal sovereign immunity; it is a case about the scope of the Fifth Amendment and therefore not applicable. *See Fisher*, 425 U.S. at 397 (taxpayer's privilege under Fifth Amendment was not violated by enforcement of the summonses because it would not compel the taxpayer to do anything, and especially would not compel him to be a witness against himself). Furthermore, the *Dugan* analysis, cited selectively by the IRS, states that sovereign immunity also applies where it could affect the sovereign's treasury or where it could affect the sovereign's public administration. *Dugan*, 372 U.S. at 620 ("The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be to 'restrain the Government from acting, or to compel it to act.'") (internal citations omitted).

The Summons is clearly an act against the sovereign because it compels production of the Tribe's private financial information and, among other things, forces the Tribe to take measures to protect its privacy and sovereignty. It does so despite the fact that the IRC, the authority under which the IRS purports to act, explicitly excludes the Tribe from federal income taxation. The Summons also affects the Tribe's treasury by going after private information relating specifically to the Tribe's finances and by forcing the Tribe to litigate the issue of its own immunity. Furthermore, it restrains the Tribe in making financial decisions regarding how the Tribal government will conduct its affairs, or distributes its own internal revenue. Finally, to the extent these documents may be used in an attempt to impermissibly tax Tribal revenue (which is not

subject to federal income tax), it clearly affects the Tribe's treasury and public administration.

Thus, tribal sovereign immunity applies under the precedent relied upon by the IRS.

## II.   THE SUMMONS IS INVALID BECAUSE IT WAS NOT ISSUED FOR A PROPER PURPOSE AND IS OVERBROAD

### 1.   The Summons Should Be Quashed Because It Was Issued For An Improper Purpose.

A summons issued by the IRS is not self-executing.  Thus, the IRS must apply to the

appropriate Court, in this case the Southern District of Florida, for enforcement.  *Nero Trading*

*LLC v. United States Dep't. of Treasury, IRS*, 570 F.3d 1244, 1248-49 (11th Cir. 2009).  In *Nero*,

the Eleventh Circuit held that:

> The Service must make a four-step *prima facie* showing to have a summons enforceable.   The [IRS] must show: (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already within the Commissioner's possession, and (4) that the administrative steps required by the Code have been followed.

*Id.* at 1248 (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).  In so holding, the

Eleventh Circuit emphasized the requirement that the IRS establish evidence *prior* to any

enforcement.   It also emphasized that once an individual's records are sought, the summons

simultaneously "trigger[s]" an individual's corresponding right to obtain both limited discovery

and a meaningful adversary hearing "in order to ascertain whether the Service issued a given

summons for an improper purpose." *Id.* at 1249.  To that end, the Eleventh Circuit also opined

that: (1) a taxpayer who normally has no knowledge of the facts, must be afforded limited

discovery and an adversarial hearing through which the taxpayer may obtain facts essential to

establishment of the IRS's *improper* purpose, and (2) improper purpose is *not* limited to a

determination of whether the summons was issued to "conduct a criminal investigation."  *Id.* at

1250 n.4.

> We find the notion that passage of I.R.C. §7602(b) and (c) created a bright-line rule precluding a determination of improper motive in the absence of a Justice Department referral *unpersuasive*.
>
> * * *
>
> [S]uch a rule implies that improper motive or purpose can only mean the issuance of a summons in order to conduct a criminal investigation.  *Our reading of improper motive or purpose is not so narrowly circumscribed.*

*Id.* (emphasis added); *accord United States v. Bichara*, 826 F.2d 1037, 1039 (11th Cir. 1987).

The Eleventh Circuit was reluctant to establish a rule which limits the definition of "improper purpose" to circumstances in which a criminal investigation has already been initiated.  The wisdom of the court's reluctance to routinely restrict the confines of conduct which constitutes "improper purpose" is illustrated by the facts of this case.  Here, the IRS issued its summons in an effort to obtain confidential financial (and other sensitive records) of the Tribe, posited with American Express, for a supposed administrative examination "relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the [Tribe]."  Exhibit A at 1.  Yet, the Tribe is a *sovereign Indian nation* that is not subject to federal income taxation and the United States has attendant trust obligations which are owed to the Tribe.[7]

---

[7] IRS summonses with dual purposes (for example, where the IRS looks for the records of a named entity but also intends to look at its members) are permitted under the law.  *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985); *United States v. Gottlieb*, 712 F.2d 1363 (11th Cir. 1983).  In this case, however, because the Tribe is not subject to federal income tax, the summons is more in the nature of a John Doe summons where the Tribe's records are being sought simply to facilitate the IRS's investigation of unnamed others.  As such, unlike the facts of *Gottlieb* and *Tiffany,* the facts here should require compliance with §7609(f), which states that any summons which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding establishing certain requirements enumerated in §7609(f).

For purposes of an IRS summons, a legitimate purpose is limited to one of two things. The summons must be used: (1) "[f]or the purpose of ascertaining the correctness of any return;" or (2) "determining the liability of any person for any internal revenue tax." *United States v. Richards*, 631 F.2d 341, 345 (4th Cir. 1980) (citing 26 U.S.C. § 7602). If a summons is issued for any other purpose, it exceeds the Government's authority. It also indicates a lack of proper purpose. And, its enforcement would result in an abuse of this Court's process. *See Powell*, 379 U.S. at 57-58. Such are the circumstances here.

In *Powell*, the Supreme Court recognized that "an abuse would take place if the IRS summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.* at 58. These grounds are not exhaustive. And, "[t]he parameters of abuse of process must remain flexible in order to prevent other forms of agency abuse of congressional authority and judicial process." *United States v. Caltex Petroleum Corp.*, 12 F. Supp. 2d 545, 554 (N.D. Tex. 1998). Among others, improper purpose has included circumstances in which the IRS planned to unlawfully disclose the summoned documents. *Id.* It also includes circumstances in which the government engages in fraud, deceit or trickery. *United States v. Deak-Perera & Co.*, 566 F. Supp. 1398, 1402 (D.D.C. 1983) (IRS committed fraud in gathering information used to issue the summons). *See also SEC v. ESM Government Securities, Inc.*, 645 F.2d 310, 317 (5th Cir. 1988) (fraud, deceit and trickery constitute an abuse of process).

Because on its face, the Summons shows an improper purpose, the Summons should be quashed. However, if there is any doubt, this Court should permit the Tribe to obtain discovery from the Government and should conduct an evidentiary hearing. This Court should do so, based upon the Tribe's mere allegation of abuse without alleging a factual background or

providing a supporting affidavit.  *Nero Trading LLC*, 570 F.3d at 1249-50 ("[W]e have held that

an allegation of improper purpose is sufficient to trigger a limited adversary hearing where the

taxpayer may question IRS officials concerning the Service's reasons for issuing the summons.")

(citation and internal quotations omitted).  The court in *Miccosukee* recognized the Tribe's right

to an evidentiary hearing where the Tribe would cross-examine the agent and granted such a

hearing.  In *Miccosukee*, the court denied the United States' Motion to Deny the Tribe's Petition

to Quash with respect to the Tribe's allegations of bad faith and improper purpose and the

Tribe's contention that the government was already in possession of the requested information,

and it ordered a hearing.  *Miccosukee*, 2010 WL 3195661 at *8.  Here, the improper purpose is

even more glaring.  No longer is there even a pretense that the United States is not seeking to

harass the Tribe and its members.  The Tribe is not subject to tax yet the IRS seeks all of its

records based on sections of the IRC that do not even apply to the Tribe.

### 2.        The Summons Should Be Quashed Because It Is Overbroad.

Even assuming that the Summons was issued for a proper purpose, which it was not, the

manner in which the Summons is written is so blatantly overbroad and improperly invasive as to

render it otherwise unenforceable.  The Summons improperly seeks from a third party a

voluminous amount of sensitive tribal records which plainly lack any relevance to an

administrative investigation of a sovereign Indian tribe concerning the "administration or

enforcement of the internal revenue laws."  Exhibit A at 1.  A summons which is overbroad or

seeks irrelevant information is unenforceable.  *See United States v. Monumental Life Ins.*

*Co.*, 440 F.3d 729 (6th Cir. 2006).

In *Monumental Life*, the Sixth Circuit refused to enforce an IRS summons where: (1) the

summons was directed to a third party, not the taxpayer being investigated; (2) the summons

sought a voluminous amount of highly sensitive proprietary information about the company's general administration of its products; (3) the IRS had opposed the imposition of a protective order, and (4) the summons sought apparently irrelevant information. *Id*. at 736-37. In so ruling, the Sixth Circuit noted that many of the documents sought by the IRS related <u>not</u> to the taxpayer being investigated, <u>but</u> <u>to</u> <u>other</u> <u>unnamed</u> <u>taxpayers</u>. *Id*. at 736. As a result, the IRS agent's affidavit that the documents were relevant was legally insufficient. *Id*. at 737. Furthermore, as the Sixth Circuit also indicated, the summons imposed an improper burden on a third party "to produce proprietary documents that the IRS refused to place under a protective order." *Id*. As a result, the Sixth Circuit denied enforcement of the summons in full, permitting the IRS to redraft a more narrowly tailored summons.[8]

Here, the Summons at issue similarly seeks voluminous amounts of sensitive tribal records from a third party which pertain to unnamed tribal members. Such circumstances, if allowed, would sanction the use of an administrative summons to *any* institution, club, corporation or organization, to justify unfettered access to all books and records of the club, corporation or organization, without regard for the proper limitations imposed by Congress on the powers of the investigating agency.[9] Indeed, permitting the IRS to operate in such a manner would be tantamount to giving it unbridled investigatory authority, like that granted by the

---

[8] The relief granted by the court was based largely on its assessment that remanding with instructions to enforce only those parts of the subpoena which sought permissible records "would prompt a long, drawn-out, and contentious process" in proceedings which had already spanned several years. *Id*. The court noted that under similar circumstances, it would normally remand with instructions for the district court to limit enforcement of the summons to relevant documents that are not already in the IRS's possession. *Id*.

[9] Such an interpretation would clearly contravene the Eleventh Circuit's mandate regarding the IRS's required establishment of a four-part prima facie case prior to its sanctioning of the enforcement of a summons. *See Nero Trading,* 570 F.3d at 1248.

Crown to pre-Revolutionary War tax collectors who hid behind "writs of assistance" to interrogate colonists concerning their use of goods subject to customs and search their homes under the pretext of investigating "prohibited and uncustomed" goods.  Seeing the potential danger of granting tax collectors unrestricted investigatory authority, the Founders of this Country included within the Bill of Rights protections against unlawful searches and seizures by government agents:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Here, as with the abusive general warrants and writs of assistance overwhelmingly rejected by the Founders of this Country and prohibited by the Constitution, the Summons fails to show why any of the requested records are relevant to a legitimate investigation. In fact, review of the Summons indicates that several of the requested records are far outside the scope of any possible legitimate inquiry. *See* Summons (Exhibit A) at 2-3 (broadly requesting "all documents pertaining to the Miccosukee Tribe in any capacity, whether held jointly or severally, as trustee, fiduciary, custodian, executor, guardian and/or beneficiary", including "all documents reflecting correspondence or other communications regarding the Miccosukee Tribe").  More importantly, the summons broadly seeks the records of a sovereign Indian tribe which, unlike other institutions or organizations, has specific protections under the law with regard to its sovereignty.  *See Kiowa*, 523 U.S. at 754 (Indian tribes are subject to suit only where Congress has authorized the suit or the Tribe has waived its immunity).  The Summons is therefore

overbroad, seeks irrelevant information, and is improper with respect to its request of Tribal records.

<u>**CONCLUSION**</u>

Based upon the foregoing, the Miccosukee Tribe of Indians of Florida moves this Court to enter an Order: (1) quashing the Summons on the grounds of sovereign immunity; (2) recognizing the Court's jurisdiction over this matter; and, if not quashed, (3) providing the Tribe with discovery through which to establish the IRS's improper purpose for issuance of the Summons, including an adversarial evidentiary hearing.

Respectfully submitted on this 29th day of September 2010.

JORDEN BURT LLP
777 Brickell Avenue, Suite 500
Miami, Florida 33131
Telephone (305) 371-2600
Facsimile (305) 372-9928


By: <u>/s/ Sonia Escobio O'Donnell</u>
James F. Jorden
Fla. Bar No. 343862
jfj@jordenusa.com
Sonia Escobio O'Donnell
Fla. Bar No. 250643
seo@jordenusa.com
Lara O'Donnell Grillo
Fla. Bar No. 037735
log@jordenusa.com
Ari H. Gerstin
Fla. Bar No. 839671
ag@jordenusa.com
Kimberly J. Freedman
Fla. Bar No. 071826
kjf@jordenusa.com

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this

30th day of September 2010 via Certified Mail, Return Receipt Requested, on the following:


American Express Company / CT Corporation Attn: Custodian of Record
111 8th Avenue, 13th Floor
New York, NY 10011

James M. Furnas, ITG Specialist
Department of the Treasury
Internal Revenue Service, Office of Indian Tribal Governments
515 West First Street
Duluth, MN 55802


United States of America
United States Attorney's Office, Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132
Attn: Civil-Process Clerk


United States of America
United States Attorney's Office, Southern District of New York
86 Chambers Street
New York City, NY 10007
Attn: Civil-Process Clerk

United States Attorney General Eric Holder
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001


By: <u>/s/ Sonia Escobio O'Donnell</u>


189619